

HEATHER SMITH
CIRCUIT CLERK

2019 AUG 16  AM 11: 16

CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS

## IN THE CIRCUIT COURT OF
## CLEBURNE COUNTY, ARKANSAS

**CHRISTOPHER PIPKIN**                                    **PLAINTIFF**

v.                    CASE NO. 12CV-19-175

**PROGRESSIVE NORTHWESTERN**
**INSURANCE COMPANY**                                    **DEFENDANT**

---

## CLASS ACTION COMPLAINT

---

### I. INTRODUCTION

1.      Christopher Pipkin ("Pipkin") insured his 2014 Kia Forte vehicle

with Progressive Northwestern Insurance Company ("Progressive"). Pipkin

was involved in a vehicle collision, and Progressive declared his vehicle a

total loss. As it does with all its total loss claims, Progressive used a Mitchell

Valuation Report ("Mitchell Report") to determine what it would pay on

Pipkin's claim. Based on the report, Progressive placed the actual cash value

of Pipkin's vehicle at $14,812.00. This is less than the actual cash value of the

vehicle and less than what was required to replace his vehicle with another

of like kind and quality.


EXHIBIT
B

2.     Progressive's use of the Mitchell Report to value total loss claims violates its contracts with its insureds and Arkansas law. Progressive is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law, Progressive uses the Mitchell Report to cheat its policyholders and increase its profits. The Mitchell Report systematically undervalues the insureds' vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving Progressive millions of dollars each year at the expense of its insureds.

3.     Pipkin brings this suit on behalf of himself and others similarly situated to recover the difference between the actual cash value of his vehicle and what he was paid, punitive damages, costs, and attorneys' fees. Pipkin also asks the Court to declare that the use of the Mitchell Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff Christopher Pipkin is a resident and citizen of Cleburne County, Arkansas. At all times relevant to this Complaint, he had a motor vehicle insurance policy with Progressive Northwestern Insurance Company.

5.     Defendant Progressive Northwestern Insurance Company is incorporated and has its principal place of business in Cleveland, Ohio. It is licensed to do business in Arkansas, and its registered agent for service is C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

6.     This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

7.     Venue is proper in this Court because Pipkin resided in Cleburne County at the time of the events which gave rise to this cause of action. Ark. Code Ann. § 16-60-101.

## III. FACTUAL ALLEGATIONS

8.     Pipkin was involved in a motor vehicle accident in April 2015, which resulted in substantial damage to his 2014 Kia Forte. Pipkin insured

his vehicle with Progressive, and he filed a claim regarding his property damage. Progressive determined that the vehicle was a total loss.

9.     Pipkin's insurance policy with Progressive contained a clause that required a total loss claim to be adjusted based on either the actual cash value or the amount necessary to replace Pipkin's vehicle. *See* Progressive's Standard Arkansas Insurance Policy, Exhibit "A" at p. 25. Upon information and belief, Exhibit "A" is Progressive's standard automobile insurance policy issued to insureds in the state of Arkansas.

10.     Pipkin has been unable to locate a copy of his policy to attach to this Complaint, and Progressive did not respond to his request for a copy of his policy. Good cause exists for Pipkin not to attach a copy of his policy to this Complaint because Progressive has a copy of the policy, and Pipkin can obtain a copy in discovery. Further, upon information and belief, Pipkin's policy contains the same material terms and provisions as the Progressive policy that is attached as Exhibit "A."

11.     To adjust Pipkin's claim, Progressive used a report obtained from Mitchell International, Inc. ("Mitchell Inc."). Mitchell Inc. provides services to the collision and insurance claim industry, including the Mitchell Report. The Mitchell Report is sold almost exclusively to insurance

companies, and it is marketed as reducing the cost of total value settlements. Upon information and belief, Progressive uses the Mitchell Report to calculate its offers of all total loss claims.

12.     Progressive presented the Mitchell Report to Pipkin as representing the "actual cash value" of his vehicle. *See* Mitchell Report, attached as Exhibit "B." The actual cash value – and the cost to replace the vehicle with one of like kind and quality – was higher.

13.     The Mitchell Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report.

14.     For instance, the listed price of four of the "comparable" vehicles in the report were automatically reduced by approximately 7.3% for a "projected sold adjustment." The Mitchell Report claims that this is "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." The Report does not explain the basis for this reduction, and it is not grounded in reality.

15.     To illustrate, the Mitchell Report indicates that out of the six comparable vehicles used to determine the "base value," two of the comparable vehicles were identified as "Franchise Sale – J.D Power and

Associates," meaning that those vehicles were actually sold at the price listed in the report. *See* Mitchell Report, p. 6. The other four vehicles were "listed" vehicles. Mitchell reduced the price of the four listed vehicles by 7.3% to "reflect consuming purchasing behavior."

16.    Notably, the vehicles were adjusted even though two of the prices were obtained from "TrueCar," a website that promotes itself as providing "the actual price you will pay at the dealership." The adjustment resulted in all four of the listed vehicles receiving a lower value than the two vehicles that were sold.

17.    The result of these reductions is to automatically reduce the amount paid on Pipkin's claim, and every other person whose total loss claim was valued using the Mitchell Report.

18.    The Mitchell Report also makes other adjustments for mileage. But the report does not explain how or why this adjustment is made.

19.    The effect of these adjustments is to reduce payment on the claim to an amount less than the actual cash value and far less than is required to purchase a replacement vehicle of like kind and quality.

20. Progressive knows that the Mitchell Report undervalues vehicles. Despite knowing that the Mitchell Report undervalues vehicles, Progressive continues to use it to determine the amount to pay claimants.

21. Progressive presented the Mitchell Report to Pipkin as representing the actual cash value of his vehicle and Pipkin relied on Progressive's representation when adjusting his claim. Progressive misled Pipkin when it presented the Mitchell Report as representing the actual cash value of his vehicle.

22. Arkansas law requires that Progressive, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is not located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to

dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

23.    Mitchell Inc. is not a qualified dealer or appraisal service located in Cleburne County, Arkansas. Mitchell Inc. does not maintain any offices in the State of Arkansas.

24.    Progressive did not provide documentation about why it needed to deviate from one of the two approved methods to adjust Pipkin's claim, and there was nothing unique about Pipkin's vehicle that would justify deviating from the methods approved under Arkansas law.

25.    Progressive knows or should know that using the Mitchell Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, Progressive uses the practices because it saves millions of dollars. Progressive can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the Mitchell Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

26.  Pipkin incorporates by reference the preceding paragraphs as if they were fully set forth herein.

27.  Pipkin brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

28.  Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown but may be easily determined from records maintained by Progressive.

29.  There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

    a.  Whether Progressive has a practice of using the Mitchell Report to determine actual cash value;

    b.  Whether Regulation § 43, § 10 is incorporated into the terms of Progressive's automobile insurance policies;

    c.  Whether Progressive's practices violated Regulation 43, § 10;

d.     Whether Mitchell Inc. is a qualified dealer or appraiser in the local market area; and

e.     By what percentage does the Mitchell Report systematically undervalue cars vis a vis their actual cash value.

30.     Pipkin's claim is typical of the putative class. Like all other putative class members, Pipkin had a total loss automobile claim that was settled and adjusted using the Mitchell Report.

31.     Pipkin will fairly and adequately protect the interest of the putative class. He has no conflicts with putative class members and has suffered the same injury as members of the putative class.

32.     Pipkin's counsel possesses the requisite resources and experience in class action litigation to adequately represent Pipkin and the putative class members in prosecuting the claims here.

33.     The questions of law and fact common to Pipkin and members of the putative class predominate over any questions affecting only individual class members. These common questions concerning Progressive's wrongdoing must be resolved for all class members.

34.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Progressive engages in a

common business practice of using the Mitchell Report to adjust total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require Progressive to litigate its business practice on a class-wide basis. Moreover, class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claim standing alone, the aggregate value of the practice is substantial.

35.     Pipkin's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the ADTPA – is an unconstitutional intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

36.    Pipkin incorporates by reference the preceding paragraphs as if they were fully set forth herein.

37.    Arkansas law requires that an insurer adjust total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

38.    Progressive adjusts total loss automobile claims by relying on the Mitchell Report, even though Mitchell Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

39.    Progressive engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the Mitchell Report to adjust Pipkin's total loss claim. Progressive also used the same unconscionable, false, or deceptive act or practice in using the Mitchell Report to adjust all its total loss claims in Arkansas. *See* Ark. Code Ann. § 4-88-107(a)(10). *See also* Ark. Ins. R. 43, § 1 (expressly providing that

violations of the Insurance Department's regulations regarding unfair claim settlement practices "constitute an unfair or deceptive act or practice in the business of insurance.").

40.    Progressive presented the Mitchell Report as representing the actual cash value of their vehicles and Pipkin and putative class members justifiably relied on Progressive's representation about the actual cash value of the vehicles. Progressive misled Pipkin and the putative class members by using the Mitchell Report.

41.    Progressive's conduct proximately caused damage to Pipkin and putative class members because they received less for their total loss claims than they should have. Pipkin and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

42.    Progressive knew or ought to have known that its conduct would result in injury to Pipkin and putative class members and it continued in such conduct in reckless disregard of the consequences. Specifically, Progressive knew that its use of the Mitchell Report undervalued its insureds' vehicles, yet it continued to use the Mitchell Report and misled its

insureds because it saved Progressive millions of dollars each year. As a result, Pipkin and putative class members are entitled to punitive damages.

43.     Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

44.     Pipkin incorporates by reference the preceding paragraphs as if they were fully set forth herein.

45.     Progressive falsely represented that the amount in the Mitchell Report represented the actual cash value of Pipkin's automobile. Progressive made the same false representation to every other putative class member and misled each putative class member.

46.     Progressive knew that its representation was false. First, Progressive knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the Mitchell Report was not a permissible method. Further, Progressive knew that the Mitchell Report systematically generated valuations that were lower than the actual cash value that would have resulted had it obtained a

valuation from a qualified local dealer or appraiser as required by Arkansas law.

47.    Progressive intended to induce and coerce Pipkin and putative class members into settling their total loss claims for less than they would have if Progressive had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

48.    Pipkin and putative class members justifiably relied on Progressive's representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

49.    Progressive's conduct proximately caused damages. Pipkin and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

50.     Progressive knew or ought to have known that its conduct would result in injury to Pipkin and putative class members and it continued in such conduct in reckless disregard of the consequences. Specifically, Progressive knew that its use of the Mitchell Report undervalued its insureds' vehicles, yet it continued to use the Mitchell Report because it saved Progressive millions of dollars each year. As a result, Pipkin and putative class members are entitled to punitive damages.

### COUNT III: BAD FAITH

51.     Pipkin incorporates by reference the preceding paragraphs as if they were fully set forth herein.

52.     Progressive acted in bad faith to avoid liability under its policy issued to Pipkin. Progressive knew that its method of settling total loss claims violated Arkansas law and would result in a lower payment to Pipkin than if Progressive would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, Progressive fraudulently presented the Mitchell Report to Pipkin as representing the actual cash value of his vehicle.

53.     Progressive did more than merely refuse to pay a claim. Progressive intentionally violated Arkansas law to save itself money at the

expense of its insureds. Progressive's conduct was dishonest and oppressive and was carried out with a state of mind characterized by contempt for its insureds.

54.     Progressive's conduct proximately caused damages. Pipkin and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

55.     Progressive knew or ought to have known that its conduct would result in injury to Pipkin and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Pipkin and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

56.     Pipkin incorporates by reference the preceding paragraphs as if they were fully set forth herein.

57.     Pipkin and Progressive entered into a contract. Among other things, the policy provides for the adjustment and settlement of total losses based on the actual cash value of the vehicle.

58.   Arkansas law requires that Progressive either provide a
replacement vehicle, provide a cash settlement based on a specific
replacement vehicle if one is available in the local market area, or use "one
(1) of two (2) or more quotations obtained by the insurer from two (2) or
more qualified dealers or appraisal services located within the local market
area when a comparable automobile is not located in the local market area."
Ark. Ins. Regulation 43, § 10(a)(2)(A). If the insurer deviates from this
method, it must provide documentation for the deviation, including giving
particulars of the automobile's condition, and "[a]ny deductions from such
cost, including deduction for salvage, must be measurable, discernable,
itemized, and specified as to dollar amount and shall be appropriate in
amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement
shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).
The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract
as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257,
760 S.W.2d 863, 865 (1988).

59.   Pipkin and putative class members did what the contract
required of them.

60.   Progressive breached the contracts by using the Mitchell Report instead of using the methods required by Arkansas law.

61.   As a result of Progressive's breach of contract, Pipkin and putative class members suffered damages in an amount equal to the difference between the amount paid to them to adjust their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. Jury Demand & Prayer for Relief

62.   Pipkin incorporates by reference the preceding paragraphs as if they were fully set forth herein.

63.   Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . . ." Pipkin demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

64.   WHEREFORE, Pipkin respectfully requests this Court:

a.   Certify a class defined as:

> All individuals insured by Progressive under a
> policy issued or effective in Arkansas who: (a)
> had a total loss claim with Progressive; (b) that
> received a settlement calculated using the
> Mitchell Report; (c) during the period from
> August 13, 2014 to the present.

b.   Appoint Christopher Pipkin as class representative;

c.   Appoint Holleman & Associates, P.A. and Brad Hendricks
Law Firm as class counsel;

d.   Declare that Progressive's practice of using the Mitchell
Report to adjust total loss claims violates Arkansas law;

e.   Enjoin Progressive from using the Mitchell Report to
adjust future total loss claims in the state of Arkansas;

f.   Award Pipkin and putative class members compensatory
damages in an amount equal to the difference between the actual cash
value of his vehicle and the amount Progressive paid;

g.   Award them punitive damages in an amount sufficient to
punish Progressive for its wrongdoing and to deter others from
engaging in similar wrongdoing;

h.      Award Pipkin and putative class members all recoverable

costs, expenses, and attorneys' fees incurred in prosecuting this action,

together with all applicable interest; and

i.      Grant Pipkin all such further relief deemed just and

appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By:

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

**CONFIDENTIAL & PROPRIETARY - DUPLICATION FORBIDDEN**



**ARKANSAS**

**AUTO POLICY**

Form 9611X AR (12/15)                                   version 2.0

1

## **CONTENTS**

INSURING AGREEMENT _____

GENERAL DEFINITIONS _____

**PART I—LIABILITY TO OTHERS**
Insuring Agreement _____
Additional Definitions _____
Additional Payments _____
Exclusions_____
Limits of Liability_____
Financial Responsibility Laws _____
Other Insurance _____
Out-of-State Coverage _____
Right of Direct Action_____

**PART II—PERSONAL INJURY PROTECTION
COVERAGE**
Insuring Agreement– Medical and
   Hospital Benefits Coverage _____
Insuring Agreement – Income Disability
   Benefits Coverage _____
Insuring Agreement – Accidental Death
   Benefits Coverage _____
Additional Definitions _____
Exclusions_____
Limits of Liability_____
Other Insurance _____

**PART III—UNINSURED/UNDERINSURED
MOTORIST COVERAGE**
Insuring Agreement– Uninsured Motorist
   Bodily Injury Coverage _____
Insuring Agreement – Underinsured Motorist
   Bodily Injury Coverage _____
Insuring Agreement – Uninsured Motorist
   Property Damage Coverage _____
Notice and Consent Requirement ___
Additional Definitions _____
Exclusions_____
Limits of Liability_____
Other Insurance _____
Arbitration _____

## PART IV—DAMAGE TO A VEHICLE

Insuring Agreement—Collision
  Coverage _____

Insuring Agreement—Comprehensive
  Coverage _____

Insuring Agreement—Additional
  Custom Parts or Equipment Coverage

Insuring Agreement—Rental
  Reimbursement Coverage _____

Insuring Agreement—Loan/Lease
  Payoff Coverage _____

Insuring Agreement—Pet Injury Coverage

Additional Definitions _____

Exclusions_____

Limits of Liability_____

Payment of Loss _____

No Benefit to Bailee _____

Loss Payable Clause _____

Other Sources of Recovery_____

Appraisal_____

## PART V—ROADSIDE ASSISTANCE COVERAGE

Insuring Agreement _____

Additional Definitions _____

Exclusions_____

Unauthorized Service Provider_____

Other Insurance _____

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS _____

## PART VII—GENERAL PROVISIONS

Policy Period and Territory _____

Changes _____

Duty to Report Changes _____

Settlement of Claims _____.

Terms of Policy Conformed to
   Statutes _____

Transfer of Interest _____

Fraud or Misrepresentation_____

Payment of Premium and Fees _____

Cancellation _____

Cancellation Refund _____

Nonrenewal_____

Automatic Termination _____

Legal Action Against Us _____

Our Rights to Recover Payment _____

Joint and Individual Interests _____

Bankruptcy _____.

## ARKANSAS AUTO POLICY

### INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page. Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

### GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. "Additional auto" means an **auto you** become the owner of during the policy period that does not permanently replace an **auto** shown on the **declarations page** if:
   a. we insure all other **autos you** own;
   b. the **additional auto** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional auto**; and
   d. **you** pay any additional premium due.
   An additional auto will have the broadest coverage **we** provide for any **auto** shown on the **declarations page**. If **you** ask **us** to insure an **additional auto** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "Auto" means a land motor vehicle:
   a. of the private passenger, pickup body, or cargo van type;
   b. designed for operation principally upon public roads;
   c. with at least four wheels; and
   d. with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.
   However, "auto" does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. "Auto business" means the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles.

4. "Bodily injury" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

5. "Covered auto" means:
   a. any **auto** or **trailer** shown on the **declarations page** for the coverages applicable to that **auto** or **trailer**;
   b. any **additional auto**;
   c. any **replacement auto**;
   d. a **trailer** owned by **you**; or
   e. a **loaner vehicle**.

6. "Declarations page" means the document showing **your** coverages, limits of liability, **covered autos**, premium, and other policy-related information. The **declarations page** may also be referred to as the Auto Insurance Coverage Summary.

7. "Loaner vehicle" means an **auto** operated by **you** that is:
   a. loaned to **you** by a duly licensed automobile dealer:
      (i) as a temporary substitute for a **covered auto** while the **covered auto** is out of use because of breakdown, repair, or servicing; or
      (ii) for use as a demonstrator vehicle; or

  b. rented or leased from a rental company that is in the business of providing primarily private passenger vehicles to the public under a rental agreement for a period not to exceed 90 days.

8. "**Occupying**" means in, on, entering or exiting.

9. "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of private passenger motor vehicles for use by individuals, businesses, or other entities.

10. "**Punitive or exemplary damages**" means damages which may be imposed to punish a wrongdoer and to deter others from similar conduct.

11. "**Rated resident**" means a person residing in the same household as **you** at the time of the loss who is not a **relative**, but only if that person is both:
  a. listed in the "Drivers and household residents" section on the **declarations page**; and
  b. not designated as either an "Excluded" or a "List Only" driver.

12. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

13. "**Replacement auto**" means an **auto** that permanently replaces an **auto** shown on the **declarations page**. A replacement auto will have the same coverage as the **auto** it replaces if the **replacement auto** is not covered by any other insurance policy. However, if the **auto** being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the **replacement auto** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days. If the **auto** being replaced did not have coverage under Part IV—Damage To A Vehicle, such coverage may be added, but the **replacement auto** will have no coverage under Part IV until **you** notify **us** of the **replacement auto** and ask **us** to add the coverage.

14. "**Ride-sharing activity**" means the use of any vehicle to provide transportation of persons or property in connection with a **transportation network company** from the time a user logs on to, or signs in to, any online-enabled application, software, website or system until the time the user logs out of, or signs off of, any such online-enabled application, software, website or system, whether or not the user has accepted any passenger(s) or delivery assignment, including the time the user is on the way to pick up any passenger(s) or property, or is transporting any passenger(s) or property.

15. "**Trailer**" means a non-motorized trailer, including a farm wagon or farm implement, designed to be towed on public roads by an **auto** and not being used:
  a. for commercial purposes;
  b. as an office, store, or for display purposes; or
  c. as a passenger conveyance.

16. "**Transportation network company**" means a corporation, partnership, sole proprietorship, or other entity that uses any online-enabled application, software, website or system to connect drivers with clients or passengers to facilitate and/or provide transportation or delivery services for compensation or a fee.

17. "**We**," "**us**" and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

18. "**You**" and "**your**" mean:
  a. a person shown as a named insured on the **declarations page**; and
  b. the spouse of a named insured if residing in the same household at the time of the loss.

6

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT

If you pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part 1.

### ADDITIONAL DEFINITIONS

When used in this Part 1:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
   b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and
   d. any "**Additional Interest**" shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

### ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured person**:
1. all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court, that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;
3. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
4. up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part 1. **We** have no duty to apply for or furnish this bond; and
5. reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART 1.

Coverage under this Part 1, including **our** duty to defend, will not apply to any **insured person** for:
1. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
   c. for **ride-sharing activity**.

This exclusion does not apply to shared-expense car pools;

2. any liability assumed under any contract or agreement by **you**, a **relative**, or a **rated resident**;

3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. **bodily injury** or **property damage** arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, a **rated resident**, or an agent or employee of **you**, a **relative**, or a **rated resident**, when using a **covered auto**;

5. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

6. **bodily injury** or **property damage** due to a nuclear reaction or radiation;

7. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

9. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;

10. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. This exclusion does not apply to a rented residence or a rented garage;

11. **bodily injury** to **you** or a **relative**;

12. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;

13. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or a **rated resident** or furnished or available for the regular use of a **relative** or a **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;

14. **bodily injury** or **property damage** arising out of **your**, a **relative's**, or a **rated resident's** use of a vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

15. **bodily injury** or **property damage** arising out of the use of a **covered auto** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**;

16. punitive or exemplary damages; or

17. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most we will pay regardless of the number of:

1. claims made;
2. **covered autos;**
3. **insured persons;**
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:
1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others, if allowed by law, derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, the limits of liability will not be increased for an accident involving an **auto** that has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. The **insured person** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a vehicle or trailer, other than a **covered auto**, will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered auto** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limits; or

2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a. the required minimum amounts and types of coverage; or
    b. the limits of liability under this policy.

## RIGHT OF DIRECT ACTION

Any person entitled to payment of damages covered under this Part I, or his or her personal representative, shall be subrogated to the right of the person shown as the named insured on the **declarations page** for payment under this Part I. If a judgment against an **insured person** remains unsatisfied after 30 days from the date notice of entry of judgment was served on either the **insured person**, the attorney for the **insured person**, or **us**, the injured person, or his or her personal representative, may maintain an action against **us** for the amount of the judgment not exceeding **our** Limits of Liability.

## PART II - PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT - MEDICAL AND HOSPITAL BENEFITS COVERAGE

If you pay the premium for this coverage, **we** will pay for reasonable and necessary **medical and hospital benefits** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of a motor vehicle.

### INSURING AGREEMENT - INCOME DISABILITY BENEFITS COVERAGE

If you pay the premium for this coverage, **we** will pay for **income disability benefits** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of a motor vehicle.

### INSURING AGREEMENT - ACCIDENTAL DEATH BENEFITS COVERAGE

If you pay the premium for this coverage, **we** will pay the amount stated on the **declarations page** if an **insured person** dies within one year of the date of an accident as a result of **bodily injury**:
1. caused by the accident; and
2. arising out of the ownership, maintenance or use of a motor vehicle.

### ADDITIONAL DEFINITIONS

When used in this Part II:
1. "**Income disability benefits**" means loss of income from work the **insured person** would have performed had the **insured person** not sustained **bodily injury**. However, if the **insured person** is a non-income earner, **income disability benefits** means expenses reasonably incurred for essential services in lieu of those the **insured person** would have performed without income had the **insured person** not sustained **bodily injury**. **Income disability benefits** apply only to the period beginning eight days after the date of the accident and not exceeding 52 weeks. **Income disability benefits** do not include any loss or expense after the death of the **insured person**.
2. "**Insured person**" and "**insured persons**" mean:
   a. **you** or any **relative**; and
   b. any other person:
      (i) while occupying a **covered auto**; or
      (ii) when struck by a **covered auto** while a pedestrian, bicyclist, or motorcyclist, or while riding on an animal or in a horse-drawn wagon or cart.
3. "**Medical and hospital benefits**" means all reasonable and necessary expenses for medical, hospital, nursing, dental, surgical, ambulance, funeral, and prosthetic services incurred within 24 months after the accident, and may include any non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing. Expenses for hospital charges are limited to semi-private accommodations.

### EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.

11

Coverage under this Part II will not apply to **bodily injury**:

1. sustained by any person, other than **you** or a **relative**, who is a named insured or additional insured under any other valid and collectible automobile insurance policy providing the minimum personal injury protection coverages required by law;
2. sustained by any person who intentionally caused such **bodily injury**;
3. sustained by any person while in the commission of a felony or while seeking to elude lawful apprehension or arrest by a law enforcement official;
4. to the extent benefits are paid or payable under any workers' compensation law, disability benefits law or similar law. This exclusion does not apply to Accidental Death Benefits Coverage;
5. to any person resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;
6. sustained by any person while **occupying** or when struck by any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased;
7. sustained by any person while **occupying** or when struck by any vehicle owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle;
8. sustained by any person while **occupying** any vehicle or trailer while located for use as a residence or premises;
9. sustained by any person while **occupying** a **covered auto** while it is being used:
   a. to carry persons or property for compensation or a fee;
   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food; or
   c. for **ride-sharing activity**.
   This exclusion does not apply to shared-expense car pools;
10. arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any **auto business**. This exclusion does not apply to **you**, a **relative**, or an agent or employee of **you** or a **relative**, when using a **covered auto**;
11. due to a nuclear reaction or radiation;
12. for which insurance:
    a. is afforded under a nuclear energy liability insurance contract; or
    b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;
14. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose; or

12

15. to you or a relative while occupying any vehicle, other than a covered auto, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle.

## LIMITS OF LIABILITY

The limits of liability shown on the declarations page for the coverages provided under this Part II – Personal Injury Protection Coverage is the most we will pay for each insured person in any one accident, regardless of the number of:
1. claims made;
2. covered autos;
3. insured persons;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

The limit of liability for Medical and Hospital Benefits is shown on the declarations page.

The limit of liability for Accidental Death Benefits is shown on the declarations page.

The limit of liability for Income Disability Benefits is:
1. 70% of the loss of gross income per week, not to exceed $140 per week, if the insured person earned income from work at the time of the accident; or
2. $70 per week, or any fractional part of a week, if the insured person did not earn income from work at the time of the accident.

In determining the amount payable under this Part II, the amount of damages sustained by the insured person due to bodily injury will be reduced by all sums paid or payable for the same elements of damages under:
1. Part I – Liability To Others; and
2. Part III – Uninsured/Underinsured Motorist Coverage.

## OTHER INSURANCE

1. With respect to bodily injury sustained by a relative, any Medical And Hospital Benefits Coverage or Income Disability Benefits Coverage afforded by this Part II shall be excess over any other similar coverage provided by a motor vehicle insurance policy under which the relative is a named insured.
2. If you or a relative are insured under any other motor vehicle insurance policy providing coverage for income disability benefits or similar coverage, the most that you or a relative may recover for income disability benefits shall not exceed the amount payable under the policy providing the highest limits of liability.
3. No coverage will be provided under this Part II for any person, other than you or a relative, who is a named insured or additional insured under any other valid and collectible motor vehicle insurance policy providing the minimum personal injury protection coverages required by law.

Subject to 1, 2, and 3 above, if there is other applicable personal injury protection insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

13

No one shall be entitled to recover duplicate payments for **income disability benefits** or **medical and hospital benefits** under this or any other motor vehicle insurance policy.

# PART III—UNINSURED/UNDERINSURED
# MOTORIST COVERAGE

## INSURING AGREEMENT- UNINSURED MOTORIST BODILY INJURY COVERAGE

If you pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury:
1. sustained by an **insured person;**
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle.**

## INSURING AGREEMENT - UNDERINSURED MOTORIST BODILY INJURY COVERAGE

If you pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of bodily injury:
1. sustained by an **insured person;**
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **underinsured motor vehicle.**

**We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

## INSURING AGREEMENT - UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

If you pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** due to property damage:
1. caused by an accident; and
2. arising out of the ownership, maintenance or use of an **uninsured motor vehicle.**

## NOTICE AND CONSENT REQUIREMENT

In order for coverage under this Part III to apply, an **insured person** must send to **us**, by certified mail, return receipt requested, written notice of any tentative settlement agreement reached with the owner or operator of an **underinsured motor vehicle**, or that person's liability insurer. However, this notice requirement shall not apply when **we** are making that offer of settlement as insurer of the owner or operator of the **underinsured motor vehicle.** The notice shall include:

1. written documentation of economic losses incurred, including copies of all medical bills;
2. written authorization or a court order allowing **us** to obtain medical reports from all employers and medical providers; and
3. written confirmation from the owner or operator's liability insurer as to the amount of the liability limits and the terms of the settlement agreement. The agreement shall not include any sum representing **punitive or exemplary damages.**

Within 30 days of **our** receipt of written notice of the tentative settlement agreement, **we** may pay the sum offered in settlement to the **insured person.** If **we** do this, **we** are subrogated to the **insured person's** right of recovery against the owner or operator of the **underinsured motor vehicle,** to the

extent of our payment, and the **insured person** must assign to **us** all rights to any amount subsequently paid from all applicable liability bonds and policies.

Any judgment or settlement for damages against an owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

## ADDITIONAL DEFINITIONS

When used in this Part III:
1. "**Insured person**" means:
   a. **you**, a **relative**, or a **rated resident**;
   b. any person while operating a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**;
   c. any person occupying, but not operating, a **covered auto**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b. or c. above.
2. "**Property damage**" means physical damage to, destruction of, or loss of use of, a **covered auto**.
3. "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for **bodily injury** is less than the amount of the **insured person's bodily injury** damages.
   An **underinsured motor vehicle** does not include any vehicle or equipment:
   a. owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**;
   b. operated on rails or crawler treads;
   c. designed mainly for use off public roads, while not on public roads;
   d. while located for use as a residence or premises;
   e. that is a **covered auto**; or
   f. that is an **uninsured motor vehicle**.
4. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the accident;
   b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is insolvent or becomes so within one year of the date of the accident; or
   c. that is a hit-and-run vehicle whose owner or operator cannot be identified and which strikes:
      (i) **you**, a **relative**, or a **rated resident**;
      (ii) a vehicle that **you**, a **relative**, or a **rated resident** are occupying; or
      (iii) a **covered auto**;
      provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident.

   An "**uninsured motor vehicle**" does not include any vehicle or equipment:
   a. owned by **you**, a **relative**, or a **rated resident** or furnished or available for the regular use of **you**, a **relative**, or a **rated resident**;
   b. owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer that is or becomes insolvent;
   c. operated on rails or crawler treads;
   d. designed mainly for use off public roads, while not on public roads;
   e. while located for use as a residence or premises;

16

    f.  that is a **covered auto**; or
    g.  that is an **underinsured motor vehicle**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

A.  Coverage under this Part III will not apply:
    1.  to **bodily injury** sustained by any person while using or **occupying**:
        a.  a **covered auto** while being used:
            (i)  to carry persons or property for compensation or a fee;
            (ii)  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or
            (iii)  for **ride-sharing activity**.
        This exclusion does not apply to shared-expense car pools; or
        b.  a motor vehicle that is owned by or available for the regular use of **you**, a **relative**, or a **rated resident**. This exclusion does not apply to a **covered auto** that is insured under this Part III;
    2.  to **bodily injury** sustained by **you**, a **relative**, or a **rated resident** while using any vehicle, other than a **covered auto**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;
    3.  directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
        a.  workers' compensation law; or
        b.  disability benefits law;
    4.  to any **punitive or exemplary damages**;
    5.  to **bodily injury** sustained by any person if that person or the legal representative of that person settles without our written consent; or
    6.  to **bodily injury** arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

B.  Coverage under this Part III will not apply to **property damage**:
    1.  sustained while a **covered auto** is being used:
        a.  to carry persons or property for compensation or a fee;
        b.  for retail or wholesale delivery, including, but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail, or food; or
        c.  for **ride-sharing activity**.
        This exclusion does not apply to shared-expense car pools;
    2.  resulting from, or sustained during practice or preparation for:
        a.  any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
        b.  any driving activity conducted on a permanent or temporary racetrack or racecourse;
    3.  to a **covered auto** for which insurance:
        a.  is afforded under a nuclear energy liability insurance contract; or
        b.  would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
    4.  to a trailer; or
    5.  arising out of the use of a **covered auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto** by **you**, a **relative**, or a **rated resident**.

17

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most we will pay regardless of the number of:

1. claims made;
2. **covered autos**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in the accident; or
6. premiums paid.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "**property damage**" is the most **we** will pay for the aggregate of all **property damage** caused by any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

 In determining the amount payable under this Part III, the amount of the damages sustained by the **insured person** due to **bodily injury** will be reduced by all sums:

1. paid by or on behalf of any persons or organizations that may be legally responsible;
2. paid under Part I—Liability To Others; and
3. paid or payable because of **bodily injury** under the following or similar laws:
   a. disability benefits law.

The limit of liability for **property damage** to a **covered auto** is the lowest of:

1. the actual cash value of the **covered auto** at the time of the accident;
2. the amount necessary to replace the **covered auto**;
3. the amount necessary to repair the **covered auto** to its pre-loss condition; or
4. the limit of liability shown on the **declarations page** for Uninsured Motorist Property Damage.

The limit of liability for **property damage** under this Part III will be reduced by all sums paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I - Liability To Others.

Payments for **property damage** under this Part III are subject to the following provisions:

1. any amount payable under this Part III for **property damage** shall be subject to the deductible shown on the **declarations page;**
2. no more than one deductible shall be applied to any one accident;
3. the deductible under this Part III shall not apply if:
   a. the operator of the **uninsured motor vehicle** has been positively identified and is solely at fault; and
   b. the **covered auto** is insured for Collision Coverage under Part IV - Damage To A Vehicle; and
4. IN THE REPAIR OF **YOUR** COVERED MOTOR VEHICLE UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, **WE** MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple auto policies issued by **us** are in effect for **you, we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide under this Part III with respect to a vehicle that is not a **covered auto** will be excess over any other uninsured or underinsured motorist coverage.

## ARBITRATION

If **we** and an **insured person** cannot agree on:
1. the legal liability of the operator or owner of an **underinsured motor vehicle** or **uninsured motor vehicle**; or
2. the amount of the damages sustained by the **insured person**;
this will be determined by arbitration if **we** and the **insured person** mutually agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred.

In the event of arbitration, each party will select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within 30 days, then on joint application by the **insured person** and **us**, the third arbitrator will be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Local rules of procedure and evidence will apply.

A decision agreed to by two of the arbitrators determines:
1. the legal liability of the operator or owner of an **underinsured motor vehicle** or **uninsured motor vehicle**; and
2. the amount of the damages sustained by the **insured person**;
but will not be binding on either the **insured person** or **us**.

The arbitrators will have no authority to award an amount in excess of the limit of liability.

**We** and an **insured person** may agree to an alternate form of arbitration.

# PART IV—DAMAGE TO A VEHICLE

## INSURING AGREEMENT—COLLISION COVERAGE

If you pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, resulting from **collision**.

In addition, **we** will pay the reasonable cost to replace any child safety seat damaged in an accident to which this coverage applies.

## INSURING AGREEMENT—COMPREHENSIVE COVERAGE

If you pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a:
1. **covered auto**, including an attached **trailer**; or
2. **non-owned auto**;
and its **custom parts or equipment**, that is not caused by **collision**.

A loss not caused by **collision** includes:
1. contact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water or flood; or
9. breakage of glass not caused by **collision**.

In addition, **we** will pay for:
1. reasonable transportation expenses incurred by **you** if a **covered auto** is stolen; and
2. loss of use damages that **you** are legally liable to pay if a **non-owned auto** is stolen.
A combined maximum of $900, not exceeding $30 per day, will apply to these additional benefits. The additional benefit for transportation expenses will not apply if **you** purchased Rental Reimbursement Coverage for the stolen **covered auto**.

Coverage for transportation expenses and loss of use damages begins 48 hours after you report the theft to **us** and ends the earliest of:
1. when the **auto** has been recovered and returned to **you** or its owner;
2. when the **auto** has been recovered and repaired;
3. when the **auto** has been replaced; or
4. 72 hours after **we** make an offer to settle the loss if the **auto** is deemed by **us** to be a total loss.

**We** must receive written proof of transportation expenses and loss of use damages.

## INSURING AGREEMENT—ADDITIONAL CUSTOM PARTS OR EQUIPMENT COVERAGE

We will pay for sudden, direct and accidental loss to **custom parts or equipment** on a covered **auto** for which this coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages. This coverage applies in addition to any coverage automatically provided for **custom parts or equipment** under Comprehensive Coverage or Collision Coverage.

## INSURING AGREEMENT—RENTAL REIMBURSEMENT COVERAGE

We will reimburse rental charges incurred when **you** rent an **auto** from a rental agency or auto repair shop due to a loss to a **covered auto** for which Rental Reimbursement Coverage has been purchased. This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **covered auto** and the loss is covered under one of those coverages.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

This coverage is limited to the **each day limit** shown on the **declarations page** for a maximum of 30 days.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:
1. when the **covered auto** cannot be driven due to a loss; or
2. if the **covered auto** can be driven, when **you** deliver the **covered auto** to an auto repair shop or one of **our** Service Centers for repairs due to the loss;

and ending the earliest of:
1. when the **covered auto** has been returned to **you**;
2. when the **covered auto** has been repaired;
3. when the **covered auto** has been replaced;
4. 72 hours after **we** make an offer to settle the loss if the **covered auto** is deemed by **us** to be a total loss; or
5. when **you** incur 30 days worth of rental charges.

**You** must provide **us** written proof of **your** rental charges to be reimbursed.

## INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for this coverage, and the **covered auto** for which this coverage was purchased is deemed by **us** to be a total loss, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:
1. the actual cash value of the **covered auto** at the time of the total loss; and
2. any greater amount the owner of the **covered auto** is legally obligated to pay under a written loan or lease agreement to which the **covered auto** is subject at the time of the total loss, reduced by:
   a. unpaid finance charges or refunds due to the owner for such charges;
   b. excess mileage charges or charges for wear and tear;
   c. charges for extended warranties or refunds due to the owner for extended warranties;
   d. charges for credit insurance or refunds due to the owner for credit insurance;
   e. past due payments and charges for past due payments; and

22

    f.  collection or repossession expenses.

However, our payment under this coverage shall not exceed the limit of liability shown on the declarations page. The limit of liability is a percentage of the actual cash value of the covered **auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that covered **auto** and the loss is covered under one of those coverages.

## INSURING AGREEMENT—PET INJURY COVERAGE

If **you** have purchased Collision coverage for at least one **covered auto** under **your** policy, and if **your pet** sustains injury or death while inside **a covered auto** or **non-owned auto** at the time of a loss covered under Collision or Comprehensive coverage, **we** will provide:
1. up to $1,000 for reasonable and customary veterinary fees incurred by **you**, a **relative**, or a **rated resident** if **your pet** is injured in, or as a direct result of, the covered loss; or
2. a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered auto** or **non-owned auto**, **we** will provide the death benefit provided **your pet** is inside that auto at the time of the theft and **your pet** is not recovered.

## ADDITIONAL DEFINITIONS

When used in this Part IV:
1. "**Collision**" means the upset of a vehicle or its impact with another vehicle or object.
2. "**Custom parts or equipment**" means equipment, devices, accessories, enhancements and changes, other than those that are offered by the manufacturer specifically for that **auto** model, or that are installed by the auto dealership as part of the original sale of a new **auto**, that:
    a.  are permanently installed or attached; and
    b.  alter the appearance or performance of the **auto**.
3. "**Mechanical parts**" means operational parts on a vehicle that wear out over time or have a finite useful life or duration typically shorter than the life of the vehicle as a whole. **Mechanical parts** do not include external crash parts, wheels, paint, or windshields and other glass.
4. "**Non-owned auto**" means an **auto**:
    a.  that is not a **loaner vehicle**; and
    b.  that is now owned by or furnished or available for the regular use of **you**, a **relative**, or a **rated resident** while in the custody of or being operated by **you**, a **relative**, or a **rated resident** with the permission of the owner of the **auto** or the person in lawful possession of the **auto**.
5. "**Your pet**" means any dog or cat owned by **you**, a **relative**, or a **rated resident**.


## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV will not apply for loss:
1. to any vehicle while being used:
    a.  to carry persons or property for compensation or a fee;
    b.  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food; or

    c. for ride-sharing activity.
This exclusion does not apply to shared-expense car pools;

2. to a **non-owned auto** while being maintained or used by a person while employed or engaged in any **auto business**;

3. to any vehicle resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or
   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

4. to any vehicle for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5. to any vehicle caused by an intentional act committed by or at the direction of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**, even if the actual damage is different than that which was intended or expected;

6. to a **covered auto** while it is leased or rented to others or given in exchange for compensation, including while being used in connection with **a personal vehicle sharing program**. This exclusion does not apply to the operation of a **covered auto by you**, a **relative**, or a **rated resident**;

7. due to destruction or confiscation by governmental or civil authorities of any vehicle because **you**, any **relative**, or any **rated resident** engaged in illegal activities;

8. to any vehicle that is due and confined to:
   a. wear and tear;
   b. freezing;
   c. mechanical, electrical or electronic breakdown or failure; or
   d. road damage to tires.
   This exclusion does not apply if the damage results from the theft of a vehicle;

9. to portable equipment, devices, accessories, and any other personal effects that are not permanently installed. This includes, but is not limited to:
   a. tapes, compact discs, cassettes, DVDs, and other recording or recorded media;
   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;
   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions;

10. to any vehicle for diminution of value;

11. to any vehicle caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

12. to any vehicle caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal or release of radioactive, nuclear, pathogenic or poisonous biological material; or
    b. any intentional discharge, dispersal or release of chemical or hazardous material for any purpose other than its safe and useful purpose; or

13. to any vehicle caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, a **rated resident**, or the owner of a **non-owned auto**. This exclusion applies regardless of

whether you, the **relative**, the **rated resident**, or the owner of the **non-owned auto** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## LIMITS OF LIABILITY

1. The limit of liability for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
   b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
   d. the Stated Amount shown on the **declarations page** for that **covered auto**.
   However, the most **we** will pay for loss to:
   a. **custom parts or equipment** is $1,000 unless **you** purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If **you** purchased ACPE, the most **we** will pay is $1,000 plus the amount of ACPE **you** purchased.
   b. a **trailer** is the limit of liability shown on the **declarations page** for that **trailer**. If the **trailer** is not shown on the **declarations page**, the limit of liability is $500.
2. Payments for loss to a **covered auto**, **non-owned auto**, or **custom parts or equipment** are subject to the following provisions:
   a. If coverage applies to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **covered auto** shown on the **declarations page**.
   b. If **you** have elected a Stated Amount for a **covered auto**, the Stated Amount is the most **we** will pay for all loss to that **covered auto**, including its **custom parts or equipment**.
   c. Coverage for **custom parts or equipment** will not cause **our** limit of liability for loss to an **auto** under this Part IV to be increased to an amount in excess of the actual cash value of the **auto**, including its **custom parts or equipment**.
   d. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:
      (i)   will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by us; and
      (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured or used, including, but not limited to:
         (a)   original manufacturer parts or equipment; and
         (b)   nonoriginal manufacturer parts or equipment.
   e. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes broken, cracked or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the loss.

f. To determine the amount necessary to repair or replace the damaged property as referred to in subsection 1., an adjustment may be made for betterment or depreciation and physical condition on:
- (i) batteries;
- (ii) tires;
- (iii) engines and transmissions, if the engine has greater than 80,000 miles; and
- (iv) any other **mechanical parts** that are nonfunctioning or inoperative.

  We will not make an adjustment for the labor costs associated with the replacement or repair of these parts.
g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

3. No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.
4. Duplicate recovery for the same elements of damages is not permitted.
5. The following additional limits of liability apply to Pet Injury coverage:
   a. The most we will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.
   b. If your pet dies in, or as a direct result of, a covered loss, we will provide a death benefit of $1,000, less any payment we made toward veterinary expenses for **your pet**.
   c. No deductible shall apply to this coverage.
6. Any amount paid or payable under this Part IV shall be reduced by any amount paid for **property damage** to the vehicle under Part III – Uninsured/Underinsured Motorist Coverage.
7. IN THE REPAIR OF **YOUR** COVERED MOTOR VEHICLE UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, **WE** MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

## PAYMENT OF LOSS

We may, at our option:
1. pay for the loss in money; or
2. repair or replace the damaged or stolen property.

At **our** expense, we may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

We may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered auto** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment

may be made to both jointly, or to either separately. However, if the **covered auto** is not a total loss, **we** may make payment to **you** and the repairer of the **auto**.

The lienholder's interest will not be protected:
1. where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2. where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned auto**, or **trailer** not shown on the **declarations page**, will be excess over any other collectible source of recovery including, but not limited to:
1. any coverage provided by the owner of the **non-owned auto** or **trailer**;
2. any other applicable physical damage insurance; and
3. any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** and the insured person may mutually agree to an appraisal of the loss. Within 30 days of any agreement to an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will determine the amount payable under this Part IV, but will not be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

**INSURING AGREEMENT**

If you pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:
1. towing of a **covered disabled auto** to the nearest qualified repair facility; and
2. labor on a **covered disabled auto** at the place of disablement.

If a **covered disabled auto** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

**ADDITIONAL DEFINITIONS**

When used in this Part V:
1. "**Covered disabled auto**" means a **covered auto** for which this coverage has been purchased that sustains a **covered emergency**.
2. "**Covered emergency**" means a disablement that is a result of:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. flat tire;
   e. lock-out; or
   f. entrapment in snow, mud, water or sand within 100 feet of a road or highway.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V will not apply to:
1. more than three **covered emergencies** for any single **covered auto** in a six-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3. installation of products or material not related to the disablement;
4. labor not related to the disablement;
5. labor on a **covered disabled auto** for any time period in excess of 60 minutes per disablement;
6. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;
7. assistance with jacks, levelers, airbags or awnings;
8. labor or repair work performed at a service station, garage, or repair shop;
9. auto storage charges;
10. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;
11. mounting or removing of snow tires or chains;
12. tire repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of a **covered disabled auto**;
14. any **covered auto** while being used in connection with **ride-sharing activity**;
15. any **covered auto** while being used in connection with **a personal vehicle sharing program**; or
16. a trailer.

28

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:
1.  towing of a **covered disabled auto** to the nearest qualified repair facility; and
2.  labor on a **covered disabled auto** at the place of disablement;
which is necessary due to a **covered emergency**.

## OTHER INSURANCE

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information, including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered auto**, or any other vehicle for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered auto**, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

## PART VII—GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy applies only to accidents and losses occurring during the policy period shown on the declarations page and that occur within a state, territory or possession of the United States of America, or a province or territory of Canada, or while a **covered auto** is being transported between their ports.

### CHANGES

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you**, a **relative**, or a **rated resident** obtaining a driver's license or operator's permit, or changes in:
1. the number, type or use classification of **covered autos**;
2. the persons who regularly operate a **covered auto**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered auto**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

### DUTY TO REPORT CHANGES

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:
1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered auto**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered auto**;

6.  an operator's marital status; or
7.  the driver's license or operator's permit status of **you**, a **relative**, or a **rated resident**.

## SETTLEMENT OF CLAIMS

We may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without our written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:
1.  made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  concealed or misrepresented any material fact or circumstance; or
3.  engaged in fraudulent conduct;
at the time of application.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:
1.  make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  conceal or misrepresent any material fact or circumstance; or
3.  engage in fraudulent conduct;
in connection with a requested change **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

If **we** void this policy, this shall not affect coverage under Part I - Liability to Others for an accident that occurs before **we** notify the named insured that the policy is void. No payment will be made to any person who concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct. If **we** void this policy, **you** must reimburse **us** if **we** make a payment.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you**, in connection with the policy application, in connection with any requested change, or at any time

32

during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM AND FEES

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at **our** option, be deemed void from its inception. This means **we** will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if the policy is cancelled for nonpayment of premium.

**We** will give at least 20 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:
1. nonpayment of premium;
2. material misrepresentation or fraud with respect to any material fact in the procurement, continuation, change or renewal of this policy;
3. material misrepresentation or fraud in the submission of any claim under this policy;
4. loss of driving privileges during the policy period, or, if this is a renewal policy, during the policy period or the 180 days immediately preceding the effective date of renewal, through suspension or revocation of an operator's license or motor vehicle registration issued to **you**, any driver in **your** household, or any regular operator of a **covered auto**. However, **we** will not cancel **your** policy

33

solely due to an administrative revocation or suspension of an operator's license pursuant to Arkansas Code Annotated §5-65-104;

5. **you** or any driver of the **covered auto** have been convicted of:
   a.  driving while intoxicated;
   b.  homicide or assault arising out of the use of a motor vehicle; or
   c.  three separate convictions of speeding or reckless driving, or any combination of the two, during the policy period or the three months prior to the effective date of the policy; or
6. any other reason permitted by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all vehicles.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is cancelled, any refund due will be computed on a daily pro rata basis. However, **we** will retain a cancellation fee if this policy is cancelled at **your** request or if cancellation is for nonpayment of premium. A cancellation fee will be charged only during the initial policy period.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, other than for nonpayment of premium, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered auto**, any similar insurance provided by this policy will terminate as to that **covered auto** on the effective date of the other insurance.

If a **covered auto** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered auto** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by

written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

**We** are entitled to the rights of recovery that the insured person to whom payment was made has against another after the insured person has been fully compensated for his or her loss, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else we require to help **us** exercise those recovery rights, and do nothing after an accident or loss to prejudice those rights.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. However, this shall not apply to payment by **us** under any Accidental Death Benefits Coverage provided under Part II - Personal Injury Protection Coverage. If **we** are not reimbursed, we may pursue recovery of that amount directly against that insured person.

If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

Our right of recovery does not apply to underinsured motorist benefits if:
1. the insured person sends **us** written notice, in accordance with the requirements of the provision in Part III - Uninsured/Underinsured Motorist Coverage, of any tentative settlement agreement reached with the owner or operator of an underinsured motor vehicle, or such person's liability insurer; and
2. we fail to pay the sum offered in settlement to the insured person by the owner or operator of the underinsured motor vehicle, or that person's liability insurer, within 30 days of **our** receipt of such notice.

Our right of recovery does not apply to underinsured motorist benefits to the extent of any payment **we** have made to the insured person under a policy of liability insurance issued by **us** to the owner or operator of an underinsured motor vehicle.

If we elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless we are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

We reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy. If execution of a judgment against an insured person under Part I – Liability To Others is returned unsatisfied because of the insolvency or bankruptcy of the insured person, the person claiming payment for damages under Part I may maintain an action against **us** for the amount of the judgment not exceeding **our** limits of liability.



**EXHIBIT B**



# 𝑀 mitchell

## Vehicle Valuation Report

Prepared for: Progressive Group of Insurance Companies
(800) 321-9843

J.D. POWER
McGRAW HILL FINANCIAL

---

| Summary | |
|---|---|

## Claim Information

| | | | |
|---|---|---|---|
| Claim Number: | 15-1519512-01 | Version #: | 1 |
| Policy Number: | | Coverage Type of Loss: | COLLISION |
| Owner: | CHRISTOPHER PIPKIN | Loss Date: | 04/29/2015 |
| Address: | 8 LISLE TURNEY DR. | Reported Date: | 04/29/2015 |
| | QUITMAN, AR 72131 | Valuation Report Date: | 05/01/2015 09:16:45 |
| Owner Home Phone: | (501) 691-0246 | Valuation Report ID: | 1005062936 |

## Vehicle Information

| | | | |
|---|---|---|---|
| Loss Vehicle: | 2014 Kia Forte EX 4 Door Sedan 2.0L 4 Cyl Gas A FWD | Location: | AR 72131 |
| | | Exterior Color: | |
| VIN: | KNAFX4A83E5058211 | License Plate: | 423MIK, Arkansas |
| Mileage: | 52,399 miles | | |
| Title History: | No | | |

## Valuation Summary

| | |
|---|---|
| Base Value: | $14,812.00 |

**Loss Vehicle Adjustments**

| | |
|---|---|
| Condition Adjustment: | $0.00 |
| Prior Damage Adjustment: | $0.00 |
| After Market Parts Adjustment: | $0.00 |
| Refurbishment Adjustment: | $0.00 |
| Title History Adjustment: | $0.00 |
| Market Value: | $14,812.00 |

**Settlement Adjustments**

| | |
|---|---|
| Deductible: | -$500.00 |
| Settlement Value: | $14,312.00 |

Title History Comments:

## Loss Vehicle Detail

Loss vehicle:   2014 Kia Forte EX 4 Door Sedan 2.0L 4 Cyl Gas A FWD

## Standard Equipment

| Exterior | |
|---|---|
| Black grille w/chrome surround | Body-colored front bumper |
| Body-Colored Power Heated Side Mirrors w/Power Folding and Turn Signal Indicator | Body-Colored Rear Bumper w/Black Rub Strip/Fascia Accent |
| Chrome door handles | Chrome Side Windows Trim |
| Clearcoat paint | Fixed Rear Window w/Defroster |
| Front fog lamps | Front Windshield -inc: Sun Visor Strip |
| Fully Automatic Projector Beam Halogen Headlamps w/Delay-Off | Fully Galvanized Steel Panels |
| Light tinted glass | Spare Tire Tire Inflator |
| Tires: P205/55R16 -inc: low rolling resistance | Trunk Rear Cargo Access |
| Variable intermittent wipers | Wheels: 6.5J x 16" Alloy |

## Interior

| | |
|---|---|
| 1 LCD Monitor In The Front | 1 Seatback Storage Pocket |
| 2 12V DC Power Outlets | 4-Way Passenger Seat -inc: Manual Recline and Fore/Aft Movement |
| 60-40 Folding Bench Front Facing Fold Forward Seatback Cloth Rear Seat | Air filtration |
| Analog Display | Cargo Area Concealed Storage |
| Cargo Features -inc: Spare Tire Tire Inflator | Cargo Space Lights |
| Carpet Floor Trim and Carpet Trunk Lid/Rear Cargo Door Trim | Cloth Front Seats w/Cloth Back Material |
| Cruise control w/steering wheel controls | Day-night rearview mirror |
| Delayed Accessory Power | Driver And Passenger Visor Vanity Mirrors w/Driver And Passenger Illumination |
| Driver foot rest | Fade-to-off interior lighting |
| FOB Controls -inc: Trunk/Hatch/Tailgate | Front Bucket Seats -inc: 6-way adjustable driver's seat |
| Front Cupholder | Front map lights |
| Full Carpet Floor Covering | Full cloth headliner |
| Full Floor Console w/Covered Storage, Mini Overhead Console w/Storage and 2 12V DC Power Outlets | HVAC -inc: Underseat Ducts |
| Illuminated glove box | Interior Trim -inc: Simulated Carbon Fiber Instrument Panel Insert and Chrome Interior Accents |
| Leather/Metal-Look Gear Shift Knob | Leather/Metal-Look Steering Wheel |
| Manual Adjustable Front Head Restraints and Manual Adjustable Rear Head Restraints | Manual air conditioning |
| Manual tilt/telescoping steering column | Outside temp gauge |
| Perimeter alarm | Power 1st Row Windows w/Driver And Passenger 1-Touch Up/Down |
| Power Door Locks w/Autolock Feature | Power Fuel Flap Locking Type |
| Power Rear Windows | Radio w/Seek-Scan, Clock, Speed Compensated Volume Control, Voice Activation and Internal Memory |
| Radio: AM/FM/CD/MP3 Audio Unit -inc: SIRIUS satellite radio, USB/auxiliary input jacks, 4 speakers w/tweeter speakers and Bluetooth wireless technology w/steering-wheel-mounted audio controls | Rear cupholder |
| Refrigerated/Cooled Box Located In The Glovebox, Driver / Passenger And Rear Door Bins | Remote Keyless Entry w/Integrated Key Transmitter, Illuminated Entry, Illuminated Ignition Switch and Panic Button |
| Remote Releases -Inc: Mechanical Trunk/Hatch and Mechanical Fuel | Sliding Front Center Armrest and Rear Center Armrest |
| Trip computer | Vinyl Door Trim Insert |
| Window Grid Antenna | Wireless Streaming |

## Mechanical

| | |
|---|---|
| 13.2 Gal. Fuel Tank | 3.06 axle ratio |
| 4-Wheel Disc Brakes w/4-Wheel ABS, Front Vented Discs, Brake Assist and Hill Hold Control | 68-Amp/Hr 600CCA Maintenance-Free Battery w/Run Down Protection |
| 90 amp alternator | Electric Power-Assist Speed-Sensing Steering |
| Front Anti-Roll Bar | Front-wheel drive |
| Gas-pressurized shock absorbers | Single Stainless Steel Exhaust w/Chrome Tailpipe Finisher |
| Strut Front Suspension w/Coil Springs | Torsion beam rear suspension w/coil springs |

## Safety

| | |
|---|---|
| ABS And Driveline Traction Control | Airbag Occupancy Sensor |
| Curtain 1st And 2nd Row Airbags | Dual Stage Driver And Passenger Front Airbags |
| Dual Stage Driver And Passenger Seat-Mounted Side Airbags | Electronic stability control (ESC) |
| Low Tire Pressure Warning | Outboard Front Lap And Shoulder Safety Belts -inc: Rear Center 3 Point, Height Adjusters and Pretensioners |
| Rear camera | Rear child safety locks |
| Side impact beams | |

## Optional Equipment

| | |
|---|---|
| CARPETED FLOOR MATS | WHEEL LOCKS |

*DIO/PIO= Dealer/Port Installed Option

## Loss Vehicle Base Value

Loss vehicle:   2014 Kia Forte EX 4 Door Sedan 2.0L 4 Cyl Gas A FWD

### Comparable Vehicle Information

Search Radius used for this valuation:          **75 miles from loss vehicle zip/postal code.**
Typical Mileage for this vehicle:               **14,000 miles**

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2014 KIA FORTE EX 4D SDN 4 2NORMAL GAS A 2WD | 15,943 | 72076 | 34 miles | $15,921.00 Sold Price | $14,797.90 |
| 2 | 2014 KIA FORTE EX 4D SDN 4 2NORMAL GAS A 2WD | 16,245 | 72076 | 34 miles | $16,700.00 Sold Price | $15,543.94 |
| 3 | 2014 KIA FORTE EX 4D SDN 4 2NORMAL GAS A 2WD | 21,023 | 72032 | 26 miles | $16,691.00 List Price | $14,682.33 |
| 4 | 2014 KIA FORTE EX 4D SDN 4 2NORMAL GAS A 2WD | 23,133 | 72120 | 36 miles | $16,269.00 List Price | $14,408.39 |
| 5 | 2014 KIA FORTE EX 4D SDN 4 2NORMAL GAS A 2WD | 18,936 | 72120 | 38 miles | $16,926.00 List Price | $14,787.94 |
| 6 | 2014 KIA FORTE EX 4D SDN 4 2NORMAL GAS A 2WD | 16,166 | 72415 | 75 miles | $16,988.00 List Price | $14,651.48 |
| | | | | | **Base Value:** | **$14,812.00** |

## Loss Vehicle Adjustments

Loss vehicle:   2014 Kia Forte EX 4 Door Sedan 2.0L 4 Cyl Gas A FWD

### Condition Adjustments

| | | |
|---|---|---|
| **Condition Adjustment:**   $0.00 | **Overall Condition: 3.00-Good** | **Typical Vehicle Condition:   3.00** |



| Category | Condition | | Comments |
|---|---|---|---|
| Interior | | | |
| DOORS/INTERIOR PANELS | 3 Good | | mult amt of visible marks/soiling remove with detail |
| CARPET | 3 Good | | mod amt of soiling remove with detail |
| HEADLINER | 3 Good | | mult amt of visible marks/soiling remove with detail |
| GLASS | 3 Good | | min pitting |
| SEATS | 3 Good | | mod amt of soiling remove with detail |
| DASH/CONSOLE | 3 Good | | mult visible marks...small gouge console lid |
| Exterior | | | |
| BODY | 3 Good | | 1 to 2 dents/greases less than 6in .. lr door/lt qtr |
| TRIM | 3 Good | | mult scratches/marks to trim |
| PAINT | 3 Good | | 1 to 4 scratches less than 6in |
| VINYL/CONVERTIBLE TOP | Typical | | |
| Mechanical | | | |
| ENGINE | 3 Good | | eng compartment has min amt of dirt |
| TRANSMISSION | 3 Good | | visible components have min amt of dirt/grease |
| Tire | 3 Good | | lf 5/32, rf 5/32, lr 6/32, rr 6/32 |

Typical condition reflects a vehicle that is in ready-for-sale condition and reflects normal wear and tear for that vehicle type / age

Comments:

## Comparable Vehicles

Loss vehicle     2014 Kia Forte EX 4 Door Sedan 2.0L 4 Cyl Gas A FWD

## Comparable Vehicles



| 1 | 2014 KIA FORTE EX 4D SDN 4 2 NORMAL GAS A2WD | | | | Sold Price: $15,921.00 |
|---|---|---|---|---|---|

| VIN: | KNAFX4A85E5XXXXXX | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| Stock No: | | Mileage | 52,399 | 15,943 | -$1,261.90 |
| Listing Date: | 02/14/2015 | Equipment | | | |
| ZIP/Postal Code: | 72076 | CARPETED FLOOR MATS | Yes | No | $93.89 |
| | | WHEEL LOCKS | Yes | No | $44.91 |
| Distance from Loss Vehicle: | 34 miles | | | | |
| Source: | FRANCHISE SALE - J.D. POWER AND ASSOCIATES | | | Total Adjustments: | -$1,123.10 |
| | | | | Adjusted Price: | $14,797.90 |

| 2 | 2014 KIA FORTE EX 4D SDN 4 2 NORMAL GAS A2WD | | | | Sold Price: $16,700.00 |
|---|---|---|---|---|---|

| VIN: | KNAFX4A81E5XXXXXX | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| Stock No: | | Mileage | 52,399 | 16,245 | -$1,301.65 |
| Listing Date: | 04/09/2015 | Equipment | | | |
| ZIP/Postal Code: | 72076 | CARPETED FLOOR MATS | Yes | No | $98.48 |
| | | WHEEL LOCKS | Yes | No | $47.11 |
| Distance from Loss Vehicle: | 34 miles | | | | |
| Source: | FRANCHISE SALE - J.D. POWER AND ASSOCIATES | | | Total Adjustments: | -$1,156.06 |
| | | | | Adjusted Price: | $15,543.94 |

| 3 | 2014 KIA FORTE EX 4D SDN 4 2 NORMAL GAS A2WD | | | | List Price: $16,691.00 |
|---|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | KNAFX4A89E5101627 | | | | |
| Stock No: | 5KC8484A | Projected Sold Adjustment | | | -$1,219.00 |
| Listing Date: | 04/10/2015 | Mileage | 52,399 | 21,023 | -$924.56 |
| ZIP/Postal Code: | 72032 | Equipment | | | |
| | | CARPETED FLOOR MATS | Yes | No | $91.24 |
| Distance from Loss Vehicle: | 26 miles | WHEEL LOCKS | Yes | No | $43.65 |
| Source: | DEALER WEB LISTING - TRUECAR.COM | | | Total Adjustments: | -$2,008.67 |
| | CRAIN KIA OF CONWAY | | | Adjusted Price: | $14,682.33 |
| | 810 SOUTH AMITY ROAD | | | | |
| | CONWAY AR 72032 | | | | |
| | 501-470-7000 | | | | |

| 4 | 2014 KIA FORTE EX 4D SDN 4 2 NORMAL GAS A2WD | | | | List Price: $16,269.00 |
|---|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | KNAFX4A81E5161837 | | | | |
| Stock No | 5KT8238A | Projected Sold Adjustment | | | -$1,188.00 |
| Listing Date: | 04/14/2015 | Mileage | 52,399 | 23,133 | -$804.08 |
| ZIP/Postal Code: | 72120 | Equipment | | | |
| | | CARPETED FLOOR MATS | Yes | No | $88.93 |
| Distance from Loss Vehicle: | 36 miles | WHEEL LOCKS | Yes | No | $42.54 |
| Source: | DEALER WEB LISTING - TRUECAR.COM | | | Total Adjustments | -$1,860.61 |
| | CRAIN KIA OF SHERWOOD | | | Adjusted Price: | $14,408.39 |
| | 5830 WARDEN ROAD | | | | |
| | SHERWOOD AR 72120 | | | | |
| | 501-542-6042 | | | | |

| 5 | 2014 KIA FORTE EX 4D SDN 4 2 NORMAL GAS A2WD | | | | List Price: **$16,926.00** |
|---|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | KNAFX4A8XE5152361 | | | | |
| Stock No: | 5KC8179A | Projected Sold Adjustment | | | -$1,236.00 |
| Listing Date: | 04/22/2015 | Mileage | 52,399 | 18,936 | -$1,038.84 |
| ZIP/Postal Code: | 72120 | Equipment | | | |
| Distance from Loss Vehicle: | 36 miles | CARPETED FLOOR MATS | Yes | No | $92.52 |
| | | WHEEL LOCKS | Yes | No | $44.26 |
| Source: | DEALER WEB LISTING - CARS.COM | | | Total Adjustments: | -$2,138.06 |
| | CRAIN KIA | | | Adjusted Price: | **$14,787.94** |
| | 5830 WARDEN RD | | | | |
| | SHERWOOD AR 72120 | | | | |
| | 501-542-6044 | | | | |

| 6 | 2014 KIA FORTE EX 4D SDN 4 2 NORMAL GAS A2WD | | | | List Price: **$16,988.00** |
|---|---|---|---|---|---|

| | | Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|---|---|
| VIN: | KNAFX4A83E5152122 | | | | |
| Stock No: | NT78853A | Projected Sold Adjustment | | | -$1,241.00 |
| Listing Date: | 04/06/2015 | Mileage | 52,399 | 16,166 | -$1,232.80 |
| ZIP/Postal Code: | 72415 | Equipment | | | |
| Distance from Loss Vehicle: | 75 miles | CARPETED FLOOR MATS | Yes | No | $92.86 |
| | | WHEEL LOCKS | Yes | No | $44.42 |
| Source: | DEALER WEB LISTING - VAST.COM | | | Total Adjustments: | -$2,336.52 |
| | CAVENAUGH PRE OWNED | | | Adjusted Price: | **$14,651.48** |
| | 3630 HIGHWAY 63 | | | | |
| | BLACK ROCK AR 72415 | | | | |
| | 870-878-6251 | | | | |

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2014 Kia Forte EX | 4 Door Sedan 2.0L 4 Cyl Gas  FWD | $19,500.00 |

## Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was built through a joint partnership between J.D. Power and Associates vehicle valuation division Power Information Network (P.I.N.) and Mitchell International, a leading provider of claims processing solutions to private passenger insurers.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process.

### Step 1 - Locate Comparable Vehicles

Locate vehicles similar to the loss vehicle in the same market area. WorkCenter Total Loss finds these vehicles in AutoTrader.com, Cars.com, Vast.com and directly from dealerships.

### Step 2 - Adjust Comparable Vehicles

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments.

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle

### Step 3 - Calculate Base Vehicle Value

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

### Step 4 - Calculate Loss Vehicle Adjustments

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

### Step 5 - Calculate the Market Value

The Market Value is calculated by applying the loss vehicle adjustments to the base value.



THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS
CIVIL DIVISION

Christopher Pipkin                                                      Plaintiff

v.                                    No. 12CV-19-175

Progressive Northwestern
Insurance Company                                                      Defendant

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

Progressive Northwestern Insurance Company
C/O C T Corporation System, Registered Agent
124 West Capitol Avenue, Suite 1900
Little Rock, Arkansas 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.
Within 30 days after service of this summons on you (not counting the day you received it) — or
60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas
— you must file with the clerk of this court a written answer to the complaint or a motion under
Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and
address are:

John Holleman
Holleman & Associates, P.A.,
1008 West Second Street
Little Rock, Arkansas 72201

If you fail to respond within the applicable time period, judgment by default may be entered
against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office

301 West Main Street

Heber Springs, AR 72543

[Signature of Clerk or Deputy Clerk]

Date: 08-16-19



No. _____ **This summons is for Progressive Northwestern Insurance Company.**

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On_____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On_____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

*To be completed if service is by a sheriff or deputy sheriff:*

Date: _____   SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
      [signature of server]

_____
      [printed name, title, and badge number]

*To be completed if service is by a person other than a sheriff or deputy sheriff:*

Date: _____

By: _____
      [signature of server]

_____
      [printed name]

Address: _____

      Phone: _____

Subscribed and sworn to before me this date: _____

      Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

_____

HEATHER SMITH
CIRCUIT CLERK

THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS
CIVIL DIVISION

2019 SEP -5  AM 10: 16

CLEBURNE COUNTY
HEBER SPRINGS, ARKANSAS

Christopher Pipkin

v.                                              No. **12 cv -19 -175**

Progressive Northwestern
Insurance Company                                              Defendant

## SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:

Progressive Northwestern Insurance Company
C/O C T Corporation System, Registered Agent
124 West Capitol Avenue, Suite 1900
Little Rock, Arkansas 72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.
Within 30 days after service of this summons on you (not counting the day you received it) — or
60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas
— you must file with the clerk of this court a written answer to the complaint or a motion under
Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and
address are:

John Holleman
Holleman & Associates, P.A.,
1008 West Second Street
Little Rock, Arkansas 72201

If you fail to respond within the applicable time period, judgment by default may be entered
against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office

301 West Main Street

[Signature of Clerk or Deputy Clerk]

Heber Springs, AR 72543                  Date: **08-16-19**



No. 19CV-19-175 This summons is for Progressive Northwestern Insurance Company.

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☒ On 8-30-19 [date] I delivered the summons and complaint to CT Corporation System [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of Progressive, Northwestern Insurance Company [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]:

☐ I was unable to execute service because:

My fee is $ _____.

*To be completed if service is by a sheriff or deputy sheriff:*

Date: _____   SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
     [signature of server]

_____
     [printed name, title, and badge number]

*To be completed if service is by a person other than a sheriff or deputy sheriff:*

Date: 8-30-19

By: _____
     [signature of server]

     Jeff Barnett
_____
     [printed name]

Address: _____

    Phone: _____

Subscribed and sworn to before me this date: _8-30-19_

    Notary Public _Erica Mitchell_

My Commission Expires: _10-8-2023_

ERICA MITCHELL
COMM. EXP.
10-8-2023
No. 12396091
PULASKI
COUNTY
NOTARY PUBLIC - ARKANSAS

Additional information regarding service or attempted service:

_____

_____